UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YONEIA DRAIN,

    Plaintiff,                           CIVIL ACTION NO. 14-12036

  v.                                   DISTRICT JUDGE THOMAS L. LUDINGTON
                                        MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

After review of the record, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, and that of Defendant **GRANTED**, as there is substantial evidence on the record that claimant retained the residual functional capacity for a limited range of sedentary work.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Plaintiff filed applications for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits on August 16, 2011, alleging that she had been

disabled and unable to work since April 25, 2009[1], at age 38, due to back pain, restriction of left shoulder movement and emotional difficulties. Benefits were initially denied by the Social Security Administration (SSA). A requested de novo hearing was held on November 29, 2012, before Administrative Law Judge (ALJ) James Kent. The ALJ subsequently found that the claimant was not entitled to disability benefits because she retained the ability to perform a restricted range of sedentary work. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 41 years old at the time of the administrative hearing (TR 30, 154). She had a tenth grade education, and had been employed as a cashier and bartender during the relevant past (TR 159, 181). She stopped working in 2011 due to severe back and left shoulder pain. She also allegedly suffered from major depression and anxiety (TR 33). Claimant testified that she was unable to stand for longer than 10 minutes, and could walk perhaps one block, before needing to rest (TR 34). She explained that could not reach overhead with her left arm, and that her right arm would hurt whenever she overused it (TR 33-34).

Plaintiff allegedly had a poor memory and had difficulty concentrating (TR 37-39). While she could watch television for a short time, she lost interest in the programs and

---

[1]Plaintiff later amended her alleged onset date of disability to August 16, 2011 (TR 11, 33, 184).

usually fell asleep (TR 39). Claimant said she experienced frequent panic attacks, especially when going out in public (TR 40). As a result, she felt socially isolated and chronically depressed (TR 42-43).

A Vocational Expert, Judith Grasco, classified Plaintiff's past work as light to medium, semi-skilled and unskilled activity (TR 45-46). The witness testified that there would be no jobs that claimant could perform if her testimony were found to be fully credible[2] (TR 49). If she were capable of sedentary work, there were numerous assembly, clerical and table worker jobs that Plaintiff could perform with minimal vocational adjustment (TR 48-49). These jobs provided a sit-stand option at will, and did not expose workers to excessive vibrations. There would be no need to climb ladders, ropes or scaffolding. Overhead reaching would be kept to a minimum. These jobs involved performing simple, routine and repetitive tasks with only occasional interaction with supervisors, co-workers or the general public (TR 47-48).

**B.     ALJ's Findings**

The Administrative Law Judge found that Plaintiff was impaired primarily as a result of a minimally bulging lumbar disc at L4-L5, a left shoulder rotator cuff injury, major depression with chronic pain and an anxiety disorder, but that these conditions, either singularly or in combination, were not severe enough to meet the Listing of Impairments.

---

[2] The witness explained that Plaintiff's alleged inability to lose focus several times an hour, and her need to rest frequently throughout the day, would preclude all work activity (TR 49).

The ALJ recognized that the claimant's pain symptoms precluded her from performing jobs requiring prolonged standing or walking. He further found that Plaintiff was unable to climb or crawl, and could not be exposed to excessive vibrations. She could only occasionally use her left arm to reach overhead or handle objects. Claimant was further limited to simple, routine and repetitive tasks where she would have minimal interaction with supervisors, co-workers or the general public. Nevertheless, the ALJ found that Plaintiff retained the residual functional capacity to perform a significant number of sedentary jobs, as identified by the Vocational Expert (TR 13-21).

### C. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc); Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

In the instant case, Plaintiff contends that her back and left shoulder pain and emotional difficulties were severe enough to preclude her from all work activity. The law is clear, however, that the mere existence of an impairment, even a severe one, will not entitle the claimant to disability benefits unless the impairment prevents her from returning to her previous work or any other substantial, gainful activity existing in the national economy, considering her age, education and work experience. 42 U.S.C. § 423(d)(2)(A), 20 C.F.R. § 404.1505 (2014).

### D.   Insured Status Requirements for Disability Benefits

A "period of disability" can only commence while an applicant is fully insured. 42 U.S.C. § 416(I)(2).  The parties agree that the Plaintiff's insured status for purposes of receiving DIB benefits expired on June 30, 2014, and thus she cannot be found disabled unless she can establish a disability prior to that date. Gibson v. Secretary, 678 F.2d 653, 654 (6th Cir. 1982).  Evidence relating to a later time period is only minimally probative, Siterlet

5

v. Secretary, 823 F.2d 918, 920 (6th Cir. 1986), and is only considered to the extent it illuminates claimant's health before the expiration of insured status. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). In other words, regardless of the seriousness of her present disability, Plaintiff must prove that she was disabled between August 16, 2011, her alleged onset date, and to June 30, 2014, when her insured status expired, in order to be entitled to DIB benefits. Garner v. Heckler, 745 F.2d 383, 390 (6th Cir. 1984).

The proper inquiry on an application for SSI benefits is whether claimant was disabled on or after the application date. Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993). Thus, Plaintiff had the burden of proving that she was disabled between August 16, 2011, the SSI application date, and December 17, 2012, the date of the ALJ decision, in order to be entitled to SSI benefits.

### E.     Analysis and Discussion

After review of the record, I suggest that there is substantial evidence supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity during the relevant period for a restricted range of sedentary work that did not require prolonged standing, walking, climbing, overhead reaching or exposure to excessive vibrations. The medical evidence, as a whole, fails to provide objective support for Plaintiff's allegations of severe and totally disabling pain or emotional problems.

The medical record contains little objective medical basis for crediting Plaintiff's complaints of disabling symptoms related to low back and left shoulder pain. Dr. Bhrama

Sarvepalli, claimant's primary care physician, reported on May 18, 2011, that his patient had remained in good general health since her last visit two years earlier (TR 209). Plaintiff told the doctor that she exercised daily and did a lot of walking. Upon examination, Dr. Sarvepalli found that claimant enjoyed good muscle tone, normal sensation and good coordination (TR 210).

In a follow-up examination three months later, the primary care physician indicated that Plaintiff had suffered back pain for several years, but that she did not exhibit any neurological abnormalities or walking impairment (TR 205). While claimant complained of severe left arm pain of gradual onset over several days, Dr. Sarvepalli noted that she had intact sensation, normal reflexes and good muscle strength (TR 203). The doctor prescribed pain medications to help alleviate her cervical radiculopathy (TR 204).

Dr. Darlin Morse examined claimant's left arm pain in February 2012, and found that she had a normal range of motion and good strength (TR 289). The consulting doctor observed that Plaintiff had an "emotional/painful response" of pulling away when lightly touched on the left shoulder, or even when he approached with a stethoscope (TR 289). A treating psychiatrist, Dr. C.A.N. Rao, reported that Plaintiff was alert, oriented, grossly logical and had a relevant thought process (TR 276). She denied having any suicidal ideations, mood swings or impulsive behavior (TR 276). Dr. Rao diagnosed recurrent major

depression, but assessed her GAF score at 55, indicating only moderate symptoms or difficulty in overall functioning[3] (TR 276).

When evaluating Plaintiff's residual mental functional capacity, the Law Judge also took into consideration the opinion of a state agency consultant[4], who concluded that the claimant could perform could perform simple and repetitive tasks on a sustained basis working alone or in a small group (TR 60). The ALJ further considered Plaintiff's statements made in an Adult Function report dated August 2011. Claimant reported that she prepared sandwiches and precooked meals on a daily basis, and that she was able to do laundry once a week depending on how she felt (TR 166). Plaintiff indicated that she was unable to drive due to her medications, but could ride in a car, and that she went grocery shopping every two weeks (TR 167). Claimant added that she was able to pay bills, count change, handle a savings account, and use a checkbook/money orders (TR 167). She reported that she watched a lot of television (TR 168). Plaintiff denied having problems getting along with family,

---

[3] Claimant asserts that her physical and mental impairments gradually worsened over time (Plaintiff's Brief in Support of Summary Judgment at pp 12-15). She cites to the opinion of her social worker, Mr. Dan Miller, who indicated in October 2011, that Plaintiff was markedly limited in her ability to concentrate, interact and adapt to the work place (TR 315-16). Mr. Miller believed that the claimant would not even be aware of normal hazards and take appropriate precautions to avoid them (TR 316). The ALJ explained that he gave Mr. Miller's conclusions "little weight" because the opinion was unsupported by the record evidence (TR 19). The ALJ considered claimant's own statements, made in an Adult Function Report, dated August 24, 2011, in which she acknowledged that she was able to pay attention and follow instructions very well when not on medications (TR 14, 169). The ALJ also considered the medical evidence from March through August 2012, revealing that Plaintiff reported doing better, and was found to have a thought process that was relevant, organized, and logical (TR 18, 307-09, 312).

[4] Under the regulations, ALJs "must consider findings of State agency medical and psychological consultants," but ALJs "are not bound by any findings made by State agency medical or psychological consultants." 20 C.F.R. § 404.1527(f)(2)(I) (2014).

8

friends, neighbors, or others, and she stated that she respected authority figures and took directions "very well" (TR 169-70). Moreover, claimant admitted that she was "very good with paying attention and following directions unless on medication" (TR 169). In light of that evidence, the Commissioner could reasonably conclude that Plaintiff's subjective complaints of persistent, severe, totally disabling symptoms stemming from her back/shoulder pain, depression and anxiety were not fully credible.

The Law Judge considered Plaintiff's somewhat sparse treatment as a factor in concluding that her pain symptoms and functional limitations were not as severe as she alleged. The ALJ took into account claimant's back and left shoulder pain by limiting her to sedentary work that did not require her to remain on her feet for prolonged periods, or to frequently perform overhead reaching. Plaintiff was also restricted from climbing, crawling and excessive vibrations. There was no medical support in record that Plaintiff needed to rest as frequently as she alleged at the hearing.

Given the lack of objective clinical evidence of disability during the relevant period, I suggest that the Administrative Law Judge could reasonably find that Plaintiff's chronic pain symptoms, depression and periodic anxiety did not prevent her from performing a reduced range of sedentary work. There is medical evidence on both sides and, having examined it, I cannot say that the Commissioner's conclusion was not supportable. In light of that evidence, the Commissioner could reasonably conclude that Plaintiff's subjective

complaints of persistent, severe, totally disabling physical and mental symptoms were not fully credible.

By establishing that she could not return to her past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that she had the vocational qualifications to perform alternative jobs in the economy, notwithstanding her various impairments. The Commissioner, however, met her burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's educational and vocational background, along with her significant impairments[5], the Vocational Expert testified that there were numerous assembly, clerical and table worker jobs that Plaintiff could perform with minimal vocational adjustment (TR 48-49). These jobs provided a sit-stand option at will, and did not expose workers to excessive vibrations. There would be no need to climb ladders, ropes or scaffolding. Overhead reaching would be kept to a minimum. These jobs involved

---

[5]The Administrative Law Judge's hypothetical questions to the Vocational Expert (VE) accurately described Plaintiff's moderate limitations caused by her back/left shoulder and emotional respiratory difficulties. Based on the claimant's residual capacity, including the limitation of changing positions as needed, the VE testified that the hypothetical person could perform a variety of sedentary jobs that were performed primarily in the seated position (TR 49). The ALJ was not required to include additional limitations, such as Plaintiff's alleged need to rest every 20 minutes, that he did not find to be credible. See Casey, 987 F.2d at 1235 ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact").

performing simple, routine and repetitive tasks with only occasional interaction with supervisors, co-workers or the general public (TR 47-48). Given the objective clinical findings of the examining physicians of record during the relevant period, there is substantial evidence on the record that Plaintiff retained the residual functional capacity for a restricted range of sedentary work activity during the relevant period.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

**III.   REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/ *Charles E Binder*
                                                CHARLES E. BINDER
Dated: June 10, 2015                   United States Magistrate Judge