UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

YONEIA A. DRAIN,

        Plaintiff,                           Case No. 14-cv-12036

v                                              Honorable Thomas L. Ludington

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION TO REMAND**

Plaintiff Yoneia Drain challenges the Commissioner's denial of her application for Social Security benefits. She claims that she is disabled as defined by the Social Security Act because she suffers from depression.

On October 15, 2014, Drain filed a motion to remand, requesting that this case be remanded to the Administrative Law Judge ("ALJ") for further proceedings. The Commissioner filed a response motion for summary judgment, requesting that the ALJ's determination be affirmed. On June 10, 2015, the United States Magistrate Judge issued a report recommending that the ALJ's determination be affirmed.

Drain timely filed objections, contending that the ALJ had erred in determining that she was not disabled. Because the ALJ's decision is supported by substantial evidence in the record, Drain's objections will be overruled and the ALJ's decision will be affirmed.

**I**

Drain was 40 years old on the date she alleges that her disability began. A.R. 30. She completed tenth grade but did not graduate high school. A.R. 30. She lives with her two children and her sister. A.R. 32.

**A**

On August 16, 2011, Drain filed the instant claim asserting that she was unable to work due to a herniated disc, a rotator cuff injury, major depression, and anxiety disorder. A.R. 13. At the administrative hearing, Drain testified that she experiences pain in her left shoulder even when she lifts objects with her right hand (the non-injured side):

> ALJ: How much can you pick up with your right arm?
>
> Drain: Well, when I use my right arm, my left arm hurts me. . . . I can't even wash dishes . . . .

A.R. 33-34. She further testified that she can only sit for about 10 minutes at a time, that she can only stand for about 10 minutes at a time, and that she can only walk about a block at a time. A.R. 34. She also testified that she drives herself to her doctors' appointments. A.R. 37.

With regard to her non-physical issues, Drain testified that she had trouble remembering and following directions because "I zone out. I'm – I be in my own world." A.R. 38. She explained that she has problems staying focused, and generally has trouble following a movie. A.R. 39. She testified that she does not like to go out in public, and that she does not like to socialize with others:

> ALJ: So, so if you worked in a small setting with coworkers you knew, they wouldn't bother you?
>
> Drain: They would bother me. People irritate, people irritate me.

A.R. 40. She also testified that she has problems with panic attacks and trouble sleeping. A.R. 42.

**B**

Drain also provided reports from her physicians to substantiate her claim of disability. She visited Dr. Rao, a mental health professional, monthly beginning in 2011. During the initial meeting on December 5, 2011, Dr. Rao diagnosed Drain with "Major Depression, Recurrent"

and chronic pain syndrome. Dr. Rao noted that "the patient is alert and oriented well" despite Drain's anxiety about "her job problems and financial problems, not sleeping, and feeling depressed at having crying spells." Dr. Rao further noted that Drain "denied mood swings or impulsive behavior . . . [and h]er thought process is grossly logical and relevant." A.R. 276. Dr. Rao prescribed "Vistaril 50 mg, at bedtime to help her sleep and anxiety" and scheduled a monthly check-in. A.R. 276.

Drain continued to meet with Dr. Rao monthly. During Drain's January, February, March, April, May, and June 2012 appointments, Dr. Rao noted that "patient is alert and oriented well . . . . Thought process is logical, relevant, and goal oriented." A.R. 305. Dr. Rao continually adjusted Drain's medications because her medications were only working "somewhat" and Drain was often "preoccupied about pain." A.R. 305.

On June 23, 2015, Drain went to the emergency room because she was experiencing a panic attack. After receiving medication, the emergency room physician wrote that Drain showed "notable improvement of her complaints." A.R. 298.

Drain continued meeting monthly with Dr. Rao throughout the fall of 2012. During these visits, Dr. Rao noted that Drain continued to be "mainly preoccupied about her pain" and so continued to adjust Drain's medication regimen. A.R. 313.

On November 12, 2012, social worker Dan Miller evaluated Drain's "ability to do work-related activities on a day-to-day basis in a regular work setting". Mr. Miller concluded that Drain was "markedly limited" in her ability to understand and remember directions, to sustain concentration and persistence, to engage in social interaction, and to adapt to work-place situations. A.R. 315-316.

The administrative record also included a Disability Determination Explanation created by Dr. Joe DeLoach, the State agency psychological consultant, on December 20, 2011. In his

report, Dr. DeLoach reviewed Drain's medical history and noted that Drain's depression resulted in only moderate limitations in following instructions, maintaining attention and concentration, and her ability to complete a normal workday: "Claimant's depression and anxiety produce mild to moderate limitations in attention, concentration and persistence, but not to the degree that the Claimant would be incapable of completing simple tasks on a sustained basis." A.R. 60. Furthermore, Dr. DeLoach found Drain's statements about her symptoms and limitations to be only "partially credible." A.R. 57.

## C

On December 17, 2012, the ALJ denied Drain's claim for benefits. The ALJ first noted that Drain had not engaged in substantial gainful activity since August 16, 2011, the alleged onset date. A.R. 13. Second, the ALJ determined that Drain suffers from the following severe impairments: (1) minimally bulging annulus without superimposed disc herniation; (2) left shoulder rotator cuff injury; (3) major depression with chronic pain; and (4) anxiety disorder. A.R. 13. Third, the ALJ concluded that Drain's severe impairments do not meet the severity of one of the Listed Impairments in 20 C.F.R. 404, Subpart P, Appendix 1; instead, the ALJ concluded that Drain's restrictions and difficulties were "moderate" rather than severe. A.R. 14. Fourth, the ALJ determined that Drain has the residual functional capacity to perform sedentary work, limited to "simple, routine, and repetitive tasks; and she can only tolerate occasional interaction with the public, co-workers, or supervision." A.R. 15. Fifth, the ALJ concluded that Drain is unable to perform any past relevant work. A.R. 19. Lastly, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Drain can perform, and therefore Drain was not disabled as defined in the Social Security Act. The ALJ therefore denied Drain's request for Social Security benefits. A.R. 20.

In reaching these conclusions, the ALJ repeatedly noted that he found Drain's testimony not credible: "After a thorough review . . . the objective findings do not support the extreme limitations alleged by the claimant and reveal that she is not fully credible." A.R. 16. He noted that Drain had earlier provided conflicting evidence to the Social Security Administration, in which she stated that she grocery shops every 2 weeks, does laundry, watches television, and has no problems getting along with other people: "I am unable to reconcile the divergence between the claimant's testimony under oath at the hearing and her own previous statements to the Social Security Administration, but find that these inconsistencies cause serious doubt on her overall veracity." A.R. 16. He explained that Drain's credibility was further undermined by the fact that "the claimant has also made numerous divergent statements to her various medical treatment providers regarding the severity of her conditions" and her medication regimen. A.R. 16-17. The ALJ was especially concerned with the misleading statements provided to her mental health physician, Dr. Rao:

> I am unable to discern any possible reason to explain the claimant's statement to Dr. Rao, but find that it is especially abhorrent as it was made to a mental health treatment provider. Mental health treatment relies heavily upon the accuracy of subjective statements to properly evaluate and address a person's mental conditions. It appears that the claimant's blatant disregard for veracity knows few limits and I therefore conclude her allegations are entitled to very little weight due to her lack of credibility.

A.R. 17.

**II**

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a magistrate judge's report and recommendation. *See* Fed. R. Civ. P. 72(b)(2). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). "Only those specific

objections to the magistrate's report made to the district court will be preserved for appellate review." *Carson v. Hudson*, 421 F. App'x 560, 563 (6th Cir. 2011) (quoting *Souter v. Jones*, 395 F.3d 577, 585-86 (6th Cir. 2005)).

## III

Davis raises two objections to the Magistrate Judge's report recommending that that ALJ's decision be affirmed. First, she claims that the ALJ improperly rejected her social worker's opinion that she was disabled. Second, she contends that the ALJ ignored that her depression continued to worsen throughout the year prior to the administrative hearing.

Under the Social Security Act (SSA), a claimant is entitled to disability benefits if she can demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.05. Davis carries the burden of establishing that she meets this definition. 42 U.S.C. §§ 423(d)(5)(A); *see also Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 459 (6th Cir. 2012).

In determining whether a claimant suffers from a disability, the ALJ conducts a standard five-step inquiry: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 719 (6th Cir. 2012).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the

Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A).

This Court must affirm the Commissioner's conclusions "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citations omitted). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

### A

Drain contends that the ALJ improperly discounted the opinion of a social worker, Dan Miller, who examined Drain in October 2011. Mr. Miller found that Drain was markedly limited in her ability to "understand and remember detailed instructions," "the ability to maintain attention and concentration," "the ability to complete a normal workday," "the ability to maintain socially appropriate behavior," and "the ability to respond appropriately to changes in the work setting," among other limitations. A.R. 314-316. Mr. Miller's report explained that a "marked limitation" meant that Drain had "[n]o useful ability to function in this area." A.R. 314. If Mr. Miller's opinion was accepted as true, then these limitations would preclude Drain from working. *See* A.R. 49-50.

The opinion of a social worker is not entitled to any particular weight. Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See* SSR 06-03p (reprinted at 2006 WL 2329939, at *2 (SSA Aug. 9, 2006)); *see also Bliss v. Commissioner*, 406 F. App'x 541, 541 (2d Cir. 2011) ("[T]he assessment by the social worker is

ineligible to receive controlling weight because social workers do not qualify as 'acceptable medical sources.'"). A social worker's opinion falls within the category of information provided by "other sources." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). The social security regulations require only that information from "other sources" be "considered." 2006 WL 2329939, at *1, 4 (citing 20 C.F.R. §§ 404.1513, 416.913)*; Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011). So long as the ALJ addresses the opinion of a social worker and gives reasons for crediting or not crediting the opinion, the ALJ has complied with the regulations. *Cole*, 66 F.3d at 939.

Here, the ALJ addressed Mr. Miller's opinion that Drain was markedly limited in her ability to concentrate, interact, and adapt to the work place. The ALJ gave Mr. Miller's little weight because "there is no evidence contained within the record to support this opinion." A.R. 19. Importantly, the ALJ reiterated that Drain had, throughout her treatment, provided erroneous and contradictory information to her healthcare providers, "which means Mr. Miller has based his opinion on at least some inaccurate information." A.R. 19.

This conclusion is supported by the evidence in the record; Mr. Miller's report is at odds with the opinions of Drain's treating physicians and Drain's own contemporaneous statements. In August 24, 2011—about two months before Mr. Miller's report—Drain acknowledged that she was "very good with paying attention and following directions unless on medication." A.R. 14, 169. At that time, she explained that she could prepare sandwiches and precooked meals on a daily basis, do laundry about once a week, and go grocery shopping every couple weeks. She could also pay bills, count change, handle a savings account, and use a checkbook/money orders. A.R. 167. And in the months following Mr. Miller's report, Drain's physicians noted that Drain was doing better and that Drain's thought process was relevant, organized, and logical. A.R. 18, 307-09, 12. The ALJ rejected Mr. Miller's opinion that Drain had marked limitations because it was contradicted by contemporaneous evidence that Drain was able to pay attention and follow

directions. The ALJ reviewed, considered, and rejected Mr. Miller's opinion based on the evidence in the record, and therefore the ALJ did not err.

**B**

Drain also contends that the ALJ erred when he limited his review to medical records prepared near her alleged onset date—August 2011. Drain contends that her symptoms worsened as the months passed, and that the ALJ ignored the increasing severity of her disability. For example, throughout 2012, Drain's physician had to change or increase the dosage of her prescription medications at least seven times.

Although Drain's physician continually increased the dosage of her prescription medications, Dr. Rao also noted that Drain was doing better with the medication and in June 2012 she received medication that provided notable improvement. *See* December 5, 2011 report at 276 ("the patient is alert and oriented well . . . . Her thought process is grossly logical and relevant"); January 2, 2012 report at 306 (same); February 6, 2012 report at 306 (same); March 5, 2012 report at 307 (same); April 2, 2012 report at 308 ("She is taking Pamelor and feels it is helping, somewhat. . . . Thought process is logical and relevant."); April 30, 2012 report at 309 ("The patient is mainly emotional about dealing with the pain. Her thought process is grossly logical and relevant."). And although Drain reported to the emergency room for a panic attack on June 23, 2012, she showed "notable improvement of her complaints" of anxiety after receiving medication. And during the second half of the year, Dr. Rao notes that Drain's anxiety appears to stem from her scheduled shoulder surgery. *See* May 22, 2012 report at 310 ("patient is preoccupied about pain [in her shoulder]"); June 15, 2012 report at 311 ("patient is mainly preoccupied about her upcoming operation"); August 10, 2012 report at 312 ("patient is alert. She is mainly preoccupied about her chronic pain"); September 7, 2012 at 313 ("patient is mainly preoccupied about her pain. . . She is not able to deal with her pain very well."). Thus,

although Drain's anxiety appears to have increased after learning she needed to have surgery on her shoulder, Dr. Rao never altered her original GAF score of 55[1] or noted that Drain was nonresponsive or that her thought process was illogical and irrelevant.

Thus, substantial evidence in the record exists to support the ALJ's conclusion that Drain's depression had "moderate symptom severity", even with the alleged worsening of her symptoms due to her upcoming surgery. Accordingly, the ALJ did not err in determining that Drain "has not been under a disability, as defined in the Social Security Act, from August 16, 2011," through December 17, 2012.

IV

Accordingly, it is **ORDERED** that Plaintiff Yoneia Drain's Objections (ECF No. 23) are **OVERRULED**.

It is further **ORDERED** that the Magistrate Judge's Report and Recommendation (ECF No. 20) is **ADOPTED**.

It is further **ORDERED** that Drain's Motion to Remand (ECF No. 15) is **DENIED**.

It is further **ORDERED** that Defendant Commissioner of Social Security's Motion for Summary Judgment (ECF No. 16) is **GRANTED**.

It is further **ORDERED** that the Administrative Law Judge's determination is **AFFIRMED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: July 30, 2015

---

[1] A GAF score of 55 is "indicative of moderate symptom severity." A.R. 19.

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 30, 2015.

s/Karri Sandusky
Karri Sandusky, Acting Case Manager